IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| v. | )   Case No. CR-15-185-R |
| | ) |
| JEFFREY LEMON, JR., | ) |
| | ) |
| Defendant-Petitioner. | ) |

## ORDER

Before the Court is the Motion to Vacate, Set Aside, or Correct Sentence, Doc. No. 114, filed by Petitioner Lemon pursuant to 28 U.S.C. § 2255. The Government has responded in opposition to the motion. Doc. No. 127. Petitioner was provided the opportunity to reply, *see* Doc. No. 128, but he has failed to do so. Upon review of the parties' submissions, the Court denies Petitioner's motion.

**I.   Background**

On September 1, 2015, a federal grand jury indicted Petitioner on eighteen counts of theft of mail matter by a United States Postal Service employee, in violation of 18 U.S.C. § 1709 and 18 U.S.C. § 2. Doc. No. 1. The grand jury superseded the indictment on November 18, 2016. Doc. No. 26. The superseding indictment alleged that Petitioner worked as a postal clerk at a post office located in Warr Acres, Oklahoma, and that on various dates between March 2015 and June 2015, Petitioner knowingly and willfully stole money orders deposited by USPS customers, and cashed them for his own benefit. *Id.*

At arraignment, the magistrate judge determined that Petitioner was financially unable to obtain counsel and appointed Assistant Federal Public Defender William P. Early to represent him. Doc. No. 5. One week before trial, Mr. Kyle Wackenheim entered an appearance for Petitioner in order to serve as Mr. Early's co-counsel. Doc. No. 38.

At trial, the jury heard from thirteen witnesses who testified that they purchased and mailed money orders at the Warr Acres Post Office that were never received by their intended recipients. *See e.g.*, Doc. No. 127–1. All but one of the witnesses provided a physical description of the postal clerk who assisted them, and their descriptions matched Petitioner. *See, e.g.* Doc. No. 127–2, pp. 49:19–50:2.[1] Moreover, evidence was provided to the jury demonstrating that the money orders at issue were cashed by "Clerk 4"—Petitioner's employee status number at the Warr Acres Post Office. Doc. No. 127–1. The jury also heard testimony that no other postal clerk logged into the computer system as "Clerk 4," *see, e.g.*, Doc. No. 127–2, pp. 330:1–17, and that Petitioner would often gamble at local casinos, *see id.* at 217–245. Most significantly, the jury heard evidence that Petitioner confessed to the charged crime in the form of a letter, wherein he admitted stealing and cashing money orders mailed by post office customers. Doc. No. 127–3.

The jury convicted Petitioner on seventeen counts of theft of mail matter by a postal service employee. Doc. No. 50. The Court sentenced Petitioner to 12 months of imprisonment and 2 years of supervised release.[2] Doc. No. 76. The Court also ordered

---

[1] For ease of reference, the page and line numbers cited to in Doc. No. 127–2 refer to the trial exhibit's original pagination, not the CM/ECF pagination.

[2] The Court later extended Petitioner's supervised release by an additional 12 months after Petitioner failed to comply with some of his supervised release conditions. Doc. No. 103.

Petitioner to pay restitution to the USPS. *Id.* At this time, Petitioner has served his complete term of imprisonment and is on supervised release until July 26, 2020. On January 25, 2019, however, Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Doc. No. 114. Therein, Petitioner asks the Court to vacate his convictions and order a new trial because he received ineffective assistance of counsel during his trial. *Id.* at 10.

## II. Standard of Review

A petitioner's § 2255 motion may be granted—and his conviction vacated—for ineffective assistance of counsel where defense counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). But a petitioner alleging ineffective assistance of counsel must meet two requirements before a Court can grant his § 2255 motion and vacate his conviction. First, he must establish that defense counsel's performance was deficient—*i.e.*, that it "fell below an objective standard of reasonableness." *Id.* at 687–88. Judicial scrutiny of counsel's performance is, however, "highly deferential." *Id.* at 689. In that regard, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Petitioner bears the burden of overcoming that presumption. *United States v. Voigt*, 877 F.2d 1465, 1468 (10th Cir. 1989).

Second, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient

to undermine confidence in the outcome." *Id.* The Court "may address the performance and prejudice components in any order but need not address both if [the petitioner] fails to make a sufficient showing of one." *Fields v. Gibson*, 277 F.3d 1203, 1216 (10th Cir. 2002).

### III. Analysis

Petitioner Lemon claims he received ineffective assistance of counsel at trial because his defense counsel failed to: (1) call certain defense witnesses; (2) produce certain exhibits; and (3) develop testimony on cross-examination that would cast doubt on the Government's case. Doc. No. 114, pp. 5–10. The Court addresses each alleged failure in turn with the understanding that Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

#### A. Defense Witnesses

Petitioner first asserts that defense counsel was ineffective because he did not call Randy Harrelson, Cecily Lemon, Lee McDaniel, Mr. Pittman, and Robert Enns as witnesses. Doc. No. 114, pp. 6–8. "Whether to call a particular witness is a tactical decision and, thus, a matter of discretion for trial counsel." *United States v. Miller*, 643 F.2d 713, 714 (10th Cir. 1981) (internal quotation marks omitted). Nonetheless, Petitioner alleges that failing to call these witnesses was unreasonable and prejudicial because the testimony of these witnesses would have likely altered the outcome of the trial. *Id.* But in support of this contention, Petitioner offers nothing but his own descriptions of these witnesses' prospective testimony. "These unsupported descriptions, which also fail to show that the uncalled witnesses would have testified at trial, are insufficient to show prejudice." *United*

4

*States v. Gallant*, 562 F. App'x 712, 715 (10th Cir. 2014); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." (footnote omitted)).

### B. Exhibits

Next, Petitioner asserts that defense counsel erred when he failed to introduce photographs of the Warr Acres Post Office that would have cast doubt on the Government's case and when he failed to acquire Petitioner's bank statements and introduce them as exhibits to demonstrate Petitioner's financial stability. Doc. No. 114, p. 7. The Court disagrees. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Pickens v. Gibson*, 206 F.3d 988, 1001 (10th Cir. 2000) (citing *Strickland*, 466 U.S. at 690). Whether defense counsel's "investigation decisions are reasonable depends critically" on the "information supplied by the defendant." *Strickland*, 466 U.S. at 691.

Regarding his failure to take and introduce certain photographs, defense counsel submits that he was "denied access to the postal facility to take pictures." Doc. No. 127–5, ¶ 4(g). Nevertheless, the government introduced a number of photos of the post office at trial that were accurate and sufficient to show the area at issue. *See* Doc. No. 127–15. Thus, counsel's failure to introduce similar photos at trial did not constitute deficient performance and Defendant cannot establish he was prejudiced by counsel's failure.

Similarly, counsel's decision not to procure and introduce Petitioner's bank statements does not demonstrate that he provided ineffective assistance. First, Petitioner fails to produce an affidavit or any other evidence substantiating his allegation that his bank records would have demonstrated his financial stability. Second, his defense counsel does not recall being advised that Petitioner's bank records would demonstrate his financial stability. *See* Doc. No. 127–5, ¶ 4(b).[3] Third, the evidence available to defense counsel at the time leading up to the trial, and during the trial itself, demonstrated that Petitioner had financial difficulties during the relevant period. For example, Petitioner was the defendant in a series of forcible entry and detainer actions filed by his apartment complex due to unpaid rent. *See* Doc. Nos. 127–7, 127–8, 127–9. Additionally, a lender—Superior Financial Company—filed a petition of indebtedness against Petitioner and attempted to garnish his wages because of an unpaid car loan. *See* Doc. No. 127–10. Because of this information, defense counsel filed a motion in limine asking the Court to exclude evidence of Petitioner's financial status as it might prejudice him at trial. *See* Doc. No. 127–5, ¶ 4(b). At bottom, Petitioner has not "overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

### C. Cross-examination

In his final complaint, Petitioner asserts that there were seven instances where defense counsel performed deficiently on cross-examination. Doc. No. 114, pp. 8–10.

---

[3] Doc. No. 127–5 is an affidavit filed by Petitioner's defense counsel, Mr. Early. The affidavit does not violate Petitioner's attorney-client privilege and is properly before the Court. *See* Doc. Nos. 117, 120.

Again, the Court disagrees. Defense counsel's strategic choices—that, as mentioned above, are "virtually unchallengeable"—include "determining how best to cross-examine witnesses." *Pickens*, 206 F.3d at 1002.

First, Petitioner complains that defense counsel failed to cross-examine other post office employees, including Debra Lyons, about their own strained financial conditions—suggesting, perhaps, that other clerks might have been guilty of the charged offense. *Id.* at 8. But Petitioner does not present any evidence supporting the allegation that other clerks were in desperate need of money. His unsupported assertion that they would have testified about their alleged financial difficulties is thus insufficient to show prejudice. *See Gallant*, 562 F. App'x at 715.

Second, Petitioner complains that defense counsel failed to cross-examine post office employees about their alleged access to other employees' passwords and workstations, in order to suggest that other postal employees might have impermissibly accessed petitioner's workstation. Doc. No. 114, p. 8. However, postal employees did testify at trial about their access to Petitioner's passwords and workstation. In fact, they testified that they did not have access to Petitioner's password, and that they never logged into Petitioner's workstation. *See* Doc. No. 127–2, pp. 330:9–17, 353:10–16, 373:11–16. Counsel's failure to revisit this testimony on cross-examination did not make his performance deficient. Moreover, Petitioner admitted in a written confession that he did commit the crime he was being charged with, *see* Doc. No. 127–3; it is thus highly unlikely that counsel's decision not to cross-examine the witnesses on this issue was prejudicial.

Third, Petitioner complains that defense counsel was ineffective because he failed to inquire about post office managers' approval of "scratched" money orders for customers.[4] Petitioner does not, however, demonstrate how this failure shows counsel's deficient performance or how it shows prejudice. To the contrary, evidence that post office managers had previously approved scratched money orders might have helped the Government's case against Petitioner because it would have served to corroborate Office of Inspector General investigator Rey Santiago's testimony that Petitioner confessed he got the idea to steal money orders and cash them for his own benefit when post office managers approved the cashing of a customer's scratched out money order. *See* Doc. No. 127–2, p. 122:3–10. Choosing not to inquire about the approval of scratched money orders, and thus risk corroboration of Agent Santiago's testimony was not unreasonable.

Fourth, Petitioner complains that defense counsel failed to elicit testimony from other postal clerks during cross-examination that they "do not place stamps on envelopes for customers and do not seal their envelopes for them." Doc. No. 114, p. 9. Presumably, Petitioner believes that such testimony would be helpful to impeach the testimony of some of the victims who alleged that the postal clerk put a stamp on their money order envelope. *See, e.g.*, Doc. No. 127–2, pp. 17:19–20, 24:20–25. Put simply, evidence regarding who stamped an envelope or who sealed it was not critical to the Government's case against Petitioner at trial. Defense counsel's failure to impeach whichever victim suggested otherwise was thus not an example of deficient performance, nor does it show prejudice—

---

[4] A scratched money order refers to a money order where the original payee has been scratched out and replaced with the name of the purchaser, presumably because the purchaser of the money order changed his mind as to whether he wanted the original payee to receive the relevant funds.

especially considering that a number of other victims testified that they stamped and sealed their own money order envelopes. *See, e.g.*, *id.* at 267:3–7, 290:23–291:5, 273:21–274:2.

Fifth, Petitioner complains that defense counsel was ineffective because he did not elicit testimony from other postal clerks that "it would be virtually impossible for [Petitioner], without being noticed, to dig through the[] large mail bins to retrieve mail containing money orders." Doc. No. 114, p. 9. Similarly, he claims that express mail envelopes containing money orders could not be tampered with without drawing attention. *Id.* On this issue, Petitioner is simply incorrect. Defense counsel did elicit testimony from other postal clerks on cross-examination indicating that the clerks never saw Petitioner doing "anything suspicious" nor did they see him ever "going through any of the[] big basketsful of mail looking for something . . . ." Doc. No. 127–2, p. 378:3–13; *see also id.* at 346:18–347:6; *id* at 359:12–360:6. Based upon the record, the Court cannot deem counsel's cross-examination deficient, and Petitioner does not show how additional testimony would have changed the outcome of the trial.

Sixth, Petitioner complains that defense counsel failed to "exploit inconsistencies" in the testimony of Rosalyn Duke, Mayra Ramirez, and Guadalupe Ezparza at trial. Doc. No. 114, p. 9. But the alleged "inconsistencies" are not reflected in the record before the Court. For example, Petitioner alleges that Ms. Duke gave inconsistent testimony about whether she mailed her money order herself or handed it to a postal clerk to mail. *Id.* Petitioner does not cite to any portion of the record to support his allegation. Upon review, Ms. Duke's testimony on this issue was not inconsistent—she testified both on direct

examination and on cross-examination that she handed her money order to the clerk at the counter. *See* Doc. No. 127–2, pp. 17: 17–23, 25:19–22.

Petitioner also alleges that Ms. Ramirez gave inconsistent testimony about whether she dealt with Petitioner when she purchased two money orders. Doc. No. 114, p. 9. He alleges that Ms. Ramirez testified that she dealt with Petitioner when purchasing her money orders, "but later admitted she dealt with another postal employee . . . ." *Id.* Petitioner is mistaken. According to the record, Ms. Ramirez testified that she purchased two money orders from the same postal clerk, whose description matched Petitioner. *See* Doc. No. 127–2, p. 29:4–31:3. She also testified that after learning that one of her money orders was not delivered to its intended recipient, she returned to the post office and spoke with a different clerk to resolve the problem. *Id.* at p. 32:13–17. This testimony was not inconsistent.

Similarly, Petitioner alleges that Ms. Esparza's testimony was inconsistent because she testified that she purchased her money order through clerk 8 but that it was cashed through clerk 4. Doc. No. 114, p. 9. Again, Petitioner does not cite to the record in support of his allegation. According to the record, Ms. Ezparza testified that she purchased a money order from a female postal clerk—clerk 8—and that after filling it out and placing it in an envelope, she gave the envelope to a different clerk, whose description matched Petitioner—clerk 4. *See* Doc. No. 127–2, pp. 47:7–10, 48:23–50:2. As above, this testimony was not inconsistent. In fact, it was corroborated by the uncontroverted post office data submitted by the Government at trial. *See* Doc. No. 127–1.

Seventh and finally, Petitioner complains defense counsel was ineffective because he did not cross-examine Agent Santiago regarding "other missing money orders or problems with the accounting system for money orders at the Warr Acres Post Office that [Petitioner] had nothing to do with." Doc. No. 114, p. 10. Petitioner does not provide the Court with any support for his allegation that there were other missing money orders or accounting issues at the post office. As stated previously, unsupported descriptions like Petitioner's are insufficient to show prejudice. *See Gallant*, 562 F. App'x at 715. Even if Petitioner did have support for his allegations, he has not demonstrated how that evidence would have affected the outcome of the trial—especially considering Petitioner's written confession to the crime charged. *See* Doc. No. 127–3.

## IV. Conclusion

For the foregoing reasons, the Court hereby denies the Motion to Vacate, Set Aside, or Correct Sentence, Doc. No. 114, filed by Petitioner Lemon pursuant to 28 U.S.C. § 2255.

**IT IS SO ORDERED** this 13th day of July 2020.

*[Signature: David L. Russell]*

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE